ILLINOIS CENT. R. Co. *v.* SMITH.

[75 South. 120, Division A.]

1. APPEAL AND ERROR. *Reversal. Amount of recovery.*

The supreme court on appeal will reverse the judgment of the lower court, where the verdict is for an amount largely in excess of the damages actually sustained and the case is not one warranting the imposition of punitive damages.

2. CARRIERS. *Misdelivery of cattle. Measure of damages.*

In an action by a shipper against a carrier for delivering cattle at the wrong pen in a stockyard, the measure of damages is the difference in the actual market value at the proper pen and the value at the pen at which they were actually delivered and not the average difference in values between such pens.

APPEAL from the circuit court of Marshall county.
HON. J. L. BATES, Judge.

Suit by W. T. Smith against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment for seven hundred and fifty dollars for actual and punitive damages alleged to have been sustained by the appellee because of the negligence of the appellant in delivering certain shipments of cattle shipped from Lamar, Miss., to National Stockyards, Ill. Under the government regulations it was necessary that each car be labeled by the carrier to show whether same came from a tick-infected district, so that in unloading the cattle they would be placed in the proper pen. The cattle shipped by appellee were entitled to be unloaded at the "native pen," but through mistake of the appellant were unloaded at the "quarantine pen." Appellee alleges that the market for cattle unloaded at the quarantine pen is restricted, and that the price of cattle unloaded at this pen is fifty cents per hundredweight less than at the native pen. A jury was waived, and from a judgment by the court for the appellee, this appeal is prosecuted.

*Mayes, Wells, May & Sanders,* for appellant.

The witness as to value must testify as to his own knowledge. General estimates are not to be admitted where they amount merely to a guess or a vague conjecture. The use of expert or other opinion testimony to prove the amount of damages which a plaintiff is entitled to recover is a question on which the statements in different judicial opinions differ very widely sometimes in the same jurisdiction. The proper line of discrimination and the reasonable one would seem to be, that if the action is one for the conversion or total destruction of certain property, so that the value of the property is the measure of damages, the general rules

as to proof of value apply, and expert or other compe-
tent opinion evidence to prove the value of the property
admissible.  But if the damages claimed are for loss or
losses to which no exact pecuniary value can be given.
the determination of the amount to be awarded, is pure-
ly a judicial function, involving the exercise of the wis-
dom and sense of justice of the jury.  In such a case for
a witness to state his opinion of the amount of the dam-
ages which should be awarded, would be to allow the
witness to advise the jury how to perform their judicial
duties.  *C. R. I. & P. Ry.* v. *Teese,* 52 L. R. A. (N. S.)
167;  *Montgomery, etc., R. Co.* v. *Varner,* 19 Ala. 187;
*Chandler* v. *Bush,* 84 Ala. 102, 4 So. 207;  *Rozzo* v.
*Varni,* 21 Pac. 762;  *Hartley* v. *Keokuk, etc., R. Co.,* 52
N. W. (Ia.) 352;  *A. T. & S. F. R. Co.* v. *Wilkinson,* 39
Pac. 1043;  *Kirk* v. *Seattle Elec. Co.,* 31 L. R. A. (N. S.
991.

In the instant case the verdict of the jury was in exact
accord with the opinions or guesses of plaintiff and his
witnesses thus showing that the opinion evidence was
controlling.  Even in cases where the verdict of the jury
was for a less amount than the estimates, the appellate
court cannot say that such testimony when admitted was
harmless.  *Ohio & M. R. Co.* v. *Nickless,* 71 Ind. 271;
*Cent. R. Co.* v. *Kellogg,* 58 G. A. 107;  *Tefft* v. *Wilcox,*
6 Kan. 46.

The burden was upon the plaintiff to sustain his claim
for damages by proof with a reasonable degree of cer-
tainty which he failed to do, and hence the judgment of
the court should have been for the defendant.  *Wooten*
v. *M. & O. R. R. Co.,* 89 Miss. 322;  *Clark* v. *Magee,* 48
So. 721;  *Johnson* v. *Hunt,* 1 Miss. Dec. 111;  *Flora* v.
*Amer. Ex. Co.,* 92 Miss. 66;  *Miss. Packet Co.* v. *Ed-
wards,* 62 Miss. 534.

A review of the testimony for the plaintiff in the court
below will reveal the absence of any evidence of a defi-
nite or certain character showing that the plaintiff suf-
fered any loss as claimed in the declaration.  The es-

timated amount of his loss is pure guess work.   There is no competent evidence in the record to show that the plaintiff actually sustained any loss whatever, and the plaintiff failed to meet the burden imposed upon him by law to make out his case by the preponderance of competent evidence.

That the evidence in this record contained in the depositions of the several witnesses for the plaintiff testifying not from any knowledge, but solely from certain unsworn records and in many instances from copies of unsworn records was incompetent as evidenced by the rule announced by this court in the case of *W. R. Langdon* v. *I. C. R. R. Co.*, 71 Miss. 146, in which case the court commenting upon the introduction of certain account of sales used the following language:

"The account of the sales of the two carloads of cattle, admitted over appellant's objection were incompetent as the unsworn statements of an unknown person."

Applying this rule to the evidence of the plaintiff's witnesses contained in the depositions herein referred to, it is manifest that the plaintiff in the court below was permitted to make out his case upon hearsay evidence, and the amount of his recovery was fixed upon nothing more than an estimate based on nothing, the opinion of one of the witnesses as to the probable loss which he guessed might have been sustained.

For the errors assigned and the erroneous judgment of the lower court we submit that this case should be reversed and remanded for a new trial.

*L. A. Smith,* for appellee.

Appellant says that we have not proven competently and legally the fact and amount of the damages.   We think we have, and so did the court below.   A carrier of cattle must comply with Act, Congress, March 3, 1905, and Acts, Ark., 1907, sec. 10, relating to quarantine, injustification of carrying cattle from below and unload-

ing them above the quarantine line. *St. Louis L. M. & S. Ry. Co.* v. *Campbell*, 172 S. W. 823; *Pecos & N. T. Ry. Co.* v. *Jarman & Arnett*, 138 S. W. 1131.

The proof of the difference in value to plaintiff of this cattle in the two different pens was from an expert Mr. Miller, who states that it was fifty per cent. There is no inflexible rule for ascertaining damages recoverable from a carrier, for loss of live stock shipped; it being merely required that satisfactory evidence be produced from which the value of the property is ascertainable with a reasonable degree of certainty and, in the absence of market value at the destination, actual or intrinsic value may be shown. *Galveston H. & S. A. Ry. Co.* v. *Powers*, 117 S. W. 459.

Appellant contends that the only way the actual damages in this case can competently be proven is to compare the prices brought in the native pen with those brought in the quarantine pen, and the difference would be the measure of damages. We say that we have done this, and we say that our proof is the only way that such proof could be made, because it would be practically impossible to find on the same day two shipments of cattle of the identical grades and weights and breed of the cattle shipped in this case, one of which was unloaded and sold in the native pen and the other of which was loaded and sold in the quarantine pen.

Where, in an action against a carrier for delay in a shipment of cattle, it was shown that the cattle would shrink from fifty to sixty pounds every twenty-four hours during transportation, it was not error to permit an expert to testify as to the difference in the value of cattle on account of such shrinkage. *Gulf, C. & S. F. Ry. Co.* v. *House & Watkins*, 88 S. W. 1110; See, also, *Gulf, C. & S. F. Ry. Co.* v. *Mathews*, 76 S. W. 607, where it was held that though the measure of damages to live stock in course of shipment is the difference between the value of the animals as delivered and their value as they should have been delivered, it was not error to permit

plaintiff to testify with reference to what the value would have been at the destination if they were deliver-ed in the same condition as they were in at the point from which they were shipped. See, also, *Cincinnati, N. & T. P. R. Co.* v. *Logan & Hundley,* 96 S. W. 910; *Ralston* v. *Union Pac. R. Co.,* 96 Neb. 199. In the Nebraska case the court held that in an action for injuries to live stock in transit, evidence as to the value of the animals at destination, and as to what would have been their value had they arrived in the condition in which they were loaded at the starting point, was admissible to es-tablish plaintiff's damages.

Where the measure of damages to cattle for injuries in transportation was the difference in their actual value before and after shipment, it was not error to allow the plaintiffs to testify to their value before shipment, and that they were damaged at least two dollars per head. *Texas & P. Ry. Co.* v. *Fambrough,* 55 S. W. 188.

But, if the court please, plaintiff below asked in his declaration for such damages as would compensate him for his actual loss and also punitory or exemplary dam-ages, because he charges defendant with wilful and gross negligence. The court passed on the matter of what amount would be required to compensate the plaintiff and to punish defendant for his gross and wilful negli-gence, and resolved the question against the defendant as to both and awarded the amount of the verdict. The amount is not excessive and should not be disturbed. Here is a railroad company which prints two kinds of placards for cattle shipments; which handles thousands of such shipments; which knows the government regu-lations; and yet in spite of the payment to it by the shipper of its charges; in spite of its knowledge that the cattle were not infected, and in spite of the fact that the government got its information from the railroad com-pany and relied on it, the carrier by grossly neglecting its proper care and circumspection in the matter, ac-tually sent appellee's cattle to market so marked as to

show that they were infected cattle the carrier should be punished and this verdict is not excessive but quite modest. The carrier violated its duty to its customer; it violated the rule of the United States Government designed to protect the shipper; it deceived the government, and it sent the cattle off to a limited market, so that there was a loss to the shipper even before the cattle left the yards at Lamar, Miss., because the market of their wrongful consignment by the carrier was one without competition and of stagnant prices. No specific proof of the *quantum* of damages is required, the court or jury assesses such damages as all the circumstances seem to warrant.

This is a proper case for punitive damages. They are in this case incidental to the claim for the real and substantial damages suffered by plaintiff for having his cattle put in the wrong pen; that fact was a circumstance with the court for allowing the verdict he did allow, and the fact was of such flagitious and gross neglect in face of known consequences that punitive damages can also be allowed. *Schippel* v. *Norton,* 38 Kas. 567, where the rule is announced. As to the testimony of the actual damages in this case, it is not subject to the objection that it is opinion evidence. Where a witness has had actual experience in the transaction of the business to which the contract relates, his testimony as to the particulars and results of that experience is not necessarily opinion evidence within the strict meaning of that term. 53 L. R. A. 33. The court in its verdict considered the actual loss and the gross negligence amounting to wilful wrong by defendant and the two together formed and constituted the basis of the verdict and judgment.

SMITH, C. J., delivered the opinion of the court.

Pretermitting any discussion of the other questions here presented, this record contains two errors for the

commission of which the judgment of the court below must be reversed:' First, the verdict is for an amount largely in excess of the damages actually sustained, and the case is not one warranting the imposition of punitive damages. Second, the only testimony showing the difference in value of the cattle had they been unloaded in the proper pen and their value when sold from the pen in which they were actually unloaded was the evidence of the broker who sold them, to the effect that "we usually consider fifty cents per hundredweight as the average between the quarantine side and the native side." This average difference is not the measure of appellee's damages, but the amount he is entitled to recover is the difference between the actual market value of the cattle had they been unloaded in a "native" pen, and their market value after they had been unloaded in a "quarantine" pen.

*Reversed and remanded.*